IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COACHTRANS, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 16-88 |
| UBER TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                            **AUGUST 19, 2016**

Presently before this Court is Defendant, Uber Technologies, Inc.'s ("Defendant" or "Uber") "Motion to Dismiss Plaintiff's Complaint," the Response in Opposition by Plaintiff, Coachtrans, Inc. ("Plaintiff"), Plaintiff's Supplemental Prayer for Relief, and Defendant's Reply in Further Support of its Motion to Dismiss. For the reasons set forth below, the Motion is granted. Counts I and III will be dismissed without prejudice, and Count II will be dismissed with prejudice.

### I.  BACKGROUND

On January 8, 2016, Plaintiff initiated this lawsuit by filing a Complaint against Uber. (Doc. No. 1.) The Complaint is comprised of the following three counts: Count I alleges tortious interference with a prospective business advantage; Count II alleges a prima facie tort; and Count III alleges false advertising under the Lanham Act pursuant to 15 U.S.C. §§ 1051 et seq. (See id.) We have drawn the relevant factual allegations from Plaintiff's Complaint.

Plaintiff is a Philadelphia taxicab company that owns three taxi licenses - called medallions - issued by the Philadelphia Parking Authority ("PPA"). (Compl. ¶¶ 6, 16-17.)

According to Plaintiff, Uber provides a service that is remarkably similar to a typical taxicab company. (Id. ¶ 28.) Uber's smartphone application (the "Uber App") allows users to electronically hail "on-demand" motor vehicle transportation services. (Id. ¶ 29.) Users request vehicular transportation through the Uber App, and, in turn, are paired with an available driver who picks them up and drives them to their destination. (Id. ¶ 30.) Since it began operating in Philadelphia around October 25, 2014, Uber has provided over one million rides to individuals as of April 2015. (Id. ¶¶ 32-33.) Plaintiff alleges that Uber self-identifies as a "taxi" based on the meta-description on its website. (Id. ¶ 45.)

Plaintiff alleges that prior to Uber's entry into the Philadelphia market, there was a thriving market for taxicab medallions, as they were being bought and sold for roughly $500,000 each. (Id. ¶¶ 18-19.) Plaintiff expected to sell its three medallions in 2015 and retire. (Id. ¶ 21.) However, Plaintiff alleges that the market for taxicab medallions in Philadelphia has been destroyed as a result of Uber's illegal operations. (Id. ¶ 22.) Under 53 Pa. C.S. Section 5714(a), a vehicle is not permitted to operate as a "taxicab" within Philadelphia unless it has a certificate of public convenience issued by the PPA authorizing the operation of the taxicab and a corresponding medallion attached to the hood of the vehicle. (Id. ¶ 38.) Plaintiff alleges that Uber "easily meets the definition of a 'taxicab,'" but has not abided by the regulations. (Id. ¶¶ 38-44.) Moreover, the PPA has filed a lawsuit against Uber alleging that it is illegally providing taxicab services throughout the Philadelphia area without its authority. (Id. ¶ 48.)

Due to these illegal operations by Uber, Plaintiff alleges that the value of the medallions has significantly lowered. (Id. ¶¶ 71-74.) PPA allegedly was forced to lower the asking price for each medallion from $475,000 to $80,000. (Id. ¶ 72.) Plaintiff also alleges that its total sales have dropped 30% since Uber entered the Philadelphia marketplace. (Id. ¶¶ 64, 69.)

## II.     STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court ("Supreme Court") set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.

2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

### III. DISCUSSION

**A. Prima Facie Tort**

Plaintiff seeks relief pursuant to a general intentional tort theory found in Restatement (Second) of Torts § 870. (Compl. ¶¶ 88-94.) "The principle of tort liability embodied by section 870 is most widely known as the doctrine of prima facie tort or sometimes simply as intentional tort." Charles Shaid of Pa., Inc. v. George Hyman Constr. Co., 947 F. Supp. 844, 847 (E.D. Pa. 1996). Uber argues that this claim lacks basis because Pennsylvania does not recognize a prima

4

facie tort as outlined in Section 870 of the Restatement. (Def.'s Mot. to Dismiss Compl. at 5-7.) Section 870 provides:

> One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

Restatement (Second) of Torts § 870.

We agree with Uber that we need not look to the factual allegations of Plaintiffs' claim here because "Pennsylvania has not yet adopted intentional or prima facie tort as set forth in § 870 of the Restatement." Mumma v. Wachovia Bank, N.A., No. 09-4765, 2016 WL 874782, at *8 (E.D. Pa. Mar. 2, 2016) (citing D'Errico v. DeFazio, 763 A.2d 424, 433 (Pa. Super. Ct. 2000)). Furthermore, "the great majority of federal district courts, several of which engaged in a lengthy examination of the issue . . . have uniformly concluded that the Pennsylvania Supreme Court would not recognize such a cause of action under Pennsylvania law."[1] Id. (citing Cotner v. Yoxheimer, No. 07-1566, 2008 WL 2680872, at *7 (M.D. Pa. July 2, 2008)).

Pennsylvania and district courts have consistently declined to entertain an independent claim for prima facie tort, and we find no basis from which to conclude otherwise. Accordingly, Count II of Plaintiff's Complaint will be dismissed with prejudice. See Keating, 2014 WL 4160558, at *8 ("[T]he Court agrees with the vast majority of courts determining this issue and concludes that intentional tort is not a cognizable legal theory in Pennsylvania.").

---

[1] The Third Circuit has not yet made a prediction on whether a cause of action for prima facie tort will be approved by the Supreme Court of Pennsylvania; however, numerous district courts have rejected such claims. See, e.g., Keating v. EquiSoft, Inc., No. 11-0518, 2014 WL 4160558, at *8 (E.D. Pa. Aug. 22, 2014); Hayes v. Waddell & Reed, No.12-0293, 2013 WL 5434139, at *8 (W.D. Pa. Sept. 26, 2013); Cotner v. Yoxheimer, No. 07-1566, 2008 WL 2680872, at *7 (M.D. Pa. July 2, 2008); Garland v. U.S. Airways, Inc., No. 05-0140, 2006 WL 2927271, at *4 (W.D. Pa. Oct. 11, 2006); Marshall v. Fenstermacher, 388 F. Supp. 2d 536, 558 (E.D. Pa. 2005); Internet Billions Doman v. Venetian Casino Resort, LLC, No. 01-5417, 2002 WL 1610032, at *1-2 (E.D. Pa. May 31, 2002); Hughes v. Halbach & Braun Indus., Ltd., 10 F. Supp. 2d 491, 499-500 (W.D. Pa. 1998); Charles Shaid, 947 F. Supp. at 855-56.

Plaintiff does not seek any leave to amend its Complaint.  However, "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile . . . . Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000)).  Here, we find it would be futile to permit a leave to amend Count II since no amendment to the Complaint would change the fact that Pennsylvania does not recognize a claim for prima facie tort.  Therefore, Count II of Plaintiff's Complaint alleging prima facie tort is dismissed with prejudice.

Additionally, Plaintiff requests that we certify this issue to the Pennsylvania Supreme Court.  (See Supp. Prayer for Relief.)  We decline Plaintiff' s invitation, as pursuant to Pennsylvania Rule of Appellate Procedure 3341, questions may be certified to the Pennsylvania Supreme Court only by the United States Supreme Court or a United States Court of Appeal.  See Pa. R. App. P. 3341(a).

**B. False Advertising Under the Lanham Act**

In order to state a claim for relief under section 43(a) of the Lanham Act for false advertising, Plaintiff must allege:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

6

Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 248 (3d Cir. 2011) (citing Warner–Lambert v. Breathasure, 204 F.3d 87, 91–92 (3d Cir. 2000)); see also Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 872 (3d Cir. 1992).

We agree with Uber that the holdings in Checker Cab Phila. Inc. v. Uber Techs., Inc., No. 14-7265, 2016 WL 950934 (E.D. Pa. Mar. 7, 2016) and Dial A Car, Inc. v. Trans., Inc., 82 F.3d 484 (D.C. Cir. 1996) warrant dismissal of Plaintiff's Lanham Act claim. Plaintiff's claim is premised on alleged violations of state and local taxi regulations, which, as a matter of law, do not provide a private cause of action.

In Dial A Car, the D.C. Circuit Court of Appeals held that private parties may not invoke the Lanham Act to create a private cause of action for enforcement of local taxi regulations. 82 F.3d at 488-89. The plaintiff, a company that was licensed to provide on-call taxi services, alleged that two other taxi companies were illegally providing similar, yet cheaper, taxi services within the District of Columbia without a license to do so. Id. at 484. Affirming the district court's dismissal of the Lanham Act claims, the appellate court found that the plaintiff was:

> simply using the Lanham Act to try to enforce its preferred interpretation of [a local taxi regulation] instead of adjudicating the issue before the [local regulatory agency]. We reject such a gambit because we see no reason to reach out and apply federal law to this quintessentially local dispute, and neither appellant nor our dissenting colleague cites to any Supreme Court or federal appellate decision that authorizes us to do so.

Id.

Similarly, in Checker Cab, a group of taxicab operators brought a claim against Uber that essentially argued that Uber "gained an unfair competitive advantage over traditional taxicab dispatch services and locally licensed/authorized taxicab drivers because they avoid the cost and burdens of complying with various state laws and local regulations that apply to taxi services in

Philadelphia." 2016 WL 950934, at *3. The plaintiffs contended that Uber's unlawful and unauthorized provision of taxicab services in Philadelphia violated section 43(a) of the Lanham Act.[2] Id.

The Court in Checker Cab analyzed numerous federal court cases, including Dial A Car, and held that the plaintiffs' claims, including the Lanham Act violations, premised on the alleged unlawful or unauthorized provision of taxi services in Philadelphia would be dismissed. See id. at *6. The Court agreed with Uber that the alleged violations of local and state regulations do not provide private causes of action and cannot support the asserted claims. See id. at *4. However, the Court did not dismiss the other two false advertising claims on the same premise as they could be analyzed without any reference to local and state taxi regulations.[3] See id. at *6-8.

The courts in both Dial A Car and Checker Cab focused on the basis for the Lanham Act claims. Put simply, if they were premised on alleged violation of local and state regulations, they were dismissed. See Checker Cab, 2016 WL 950934, at *4; Dial A Car, 82 F.3d at 488-89. Plaintiff claims that Uber made false and misleading statements to the public when it identified itself as a "taxi" in commerce. (Compl. ¶ 96.) Despite this allegation, Plaintiff makes several contradictory allegations that Uber is, in fact, operating as a taxi company.[4] At no point does Plaintiff attempt to address this inconsistency in their argument.

---

[2] The plaintiffs brought a total of six claims, which included claims for false advertising, unfair competition, and violations of the civil RICO statute. Checker Cab, 2016 WL 950934, at *3.

[3] The plaintiffs brought false advertising claims under section 43(a) of the Lanham act based on two alleged false representations made by Uber that included: (1) Uber claiming their fares were 20% cheaper than taxis in Philadelphia; and (2) Uber releasing a statement that the taxis in Philadelphia were uninsured. See Checker Cab, 2016 WL 950934, at *3 at *6-8. The Court eventually dismissed the false advertising claim against Uber regarding their assertion their fares were cheaper since the Court determined that the statement was true, but allowed the other claim regarding Uber releasing a statement that the taxis in Philadelphia were uninsured to proceed. See id.

[4] Plaintiff makes several references in its Complaint that Uber is a taxi company. See Compl. ¶ 28 ("[W]hile Uber tries to distinguish itself from traditional taxicab companies by referring to itself as a 'transportation network company' or a 'ridesharing' company, in reality Uber provides a service that is remarkably similar to a typical taxicab company."); id. ¶ 40 ("[N]evertheless, Uber clearly falls within the definition of a 'taxicab' company that

We agree with Plaintiff that its Lanham Act claim does not make a single reference to PPA regulations.  However, its claim is not saved simply because of the fact that it is not blatantly premised on violations of local and state taxi regulations.  In its Complaint, Plaintiff devotes an entire section to explaining that "Uber clearly falls within the definition of a 'taxicab' company that provides 'taxicab services' under Pennsylvania law," but it does not follow any of the regulations applicable to taxis.  (See Compl. ¶¶ 35-48.)  Thus, it is implicit in Plaintiff's claim that since Uber clearly falls into the definition of a taxi, it is only false or misleading to call itself a taxi because of its alleged noncompliance with state and local taxi regulations.

The Lanham Act claims that the Checker Cab Court held were not premised on alleged violations of local and state taxi regulations could be analyzed completely without ever referencing a single taxi regulation.  See Checker Cab, 2016 WL 950934, at *6 (analyzing whether it was in violation of section 43(a) of the Lanham Act when Uber claimed their fares were 20% cheaper than taxis in Philadelphia and when Uber released a statement that the taxis in Philadelphia were uninsured).

However, as in the case here, to allege that it is false or misleading for Uber to call itself a taxi, when it meets the definition of a taxi, clearly implicates local and state regulations.  Plaintiff is essentially arguing that it is only false or misleading for Uber to call itself a taxi because it clearly meets the definition of a taxi, but simply neglects to comply with Pennsylvania's regulations for taxis, i.e., you should not be permitted to advertise yourself as a taxi since you do not follow the local rules pertaining to taxis.  Thus, Plaintiff's claim requires review and application of the pertinent taxi regulations.  Under the guidance of Checker Cab, Uber's "alleged violation of state and local taxi regulations fail, as a matter of law, because the

---

provides 'taxicab services' under Pennsylvania law."); id. ¶ 43 ("[U]ber easily meets the definition of a 'taxicab' which provides 'taxicab services.'").

9

alleged violation of local and state regulations, which do not provide private causes of action, cannot support the asserted claims." Id. at *4.

Plaintiff attempts to camouflage the enforcement of local rules and regulations under the guise of a false advertising claim. If Plaintiff wants relief for such allegations, it should file an informal complaint with the PPA. See 52 Pa. Code § 1003.41 (discussing how entities, including private parties, may file an informal complaint with the PPA alleging violations of taxicab regulations). After receiving the informal complaint, the PPA would then determine whether it has sufficiently raised a violation of taxicab regulations. See id. § 1003.42. If the PPA determines that a violation has occurred, then the PPA—not the informal complainant—files and prosecutes the formal complaint. See id. § 1003.42(d). The informal complainant may initiate a formal complaint before the PPA pursuant to the statutes above only if they do so within 30 days of service of an informal complaint termination letter from the Enforcement Department. See id. § 1003.43. What is most important to understand is that none of these procedures involves a private party initiating a lawsuit in state or federal court.[5] These alleged violations simply do not create a private cause of action. See Checker Cab, 2016 WL 950934, at *4.

In Plaintiff's Opposition, it argues that its claim requires no reference to any taxi regulations because it is "based on Defendant's false statement that it provides 'taxis' to the public." (Pl.'s Opp. to Mot. to Dismiss Compl. at 26). This, however, is not the factual allegation in the Complaint. (See Compl. ¶ 96) ("[B]y identifying itself as a 'taxi' in commerce, Uber made a false and misleading statements [sic] to the public."). Plaintiff relies on this altered allegation throughout its opposition. (See Pl.'s Opp. to Mot. to Dismiss Compl. at 26-28.) Since we are considering a motion to dismiss pursuant to Federal Civil Rule of Procedure 12(b)(6), we

---

[5] We do recognize that a private party may file an appeal from an order of the PPA to a Commonwealth court. See 52 Pa. Code § 1005.241.

10

only analyzed the allegations made in Plaintiff's Complaint. Furthermore, Plaintiff may not amend his complaint through statements made in his opposition brief. See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988).

Therefore, we find that Plaintiff has failed to adequately allege a claim for relief under section 43(a) of the Lanham Act for false advertising. We will allow Plaintiff fourteen days to file an Amended Complaint if it so chooses to cure its deficiencies. However, we counsel Plaintiff that if it fails to file an Amended Complaint within the fourteen days, we will dismiss the claim with prejudice for failing to state a claim from which relief can be granted.[6]

### C. Tortious Interference with a Prospective Contractual or Economic Relationship

Tortious interference with an existing or prospective contract under Pennsylvania law requires:

> (1) the existence of a contractual relationship or prospective contractual or economic relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the prospective relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) the occasioning of actual damage as a result of defendant's conduct; and (5) for a prospective contractual or economic relationship, a reasonable likelihood that the relationship would have occurred but for defendant's interference.

Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009) (citations omitted); see also Restatement (Second) of Torts, § 766–766B (1979).

Pennsylvania courts look to whether the evidence supports a "reasonable likelihood or probability" that the contemplated contract would have materialized absent the defendant's

---

[6] The Third Circuit recommended a procedure for district courts to follow when dismissing complaints without prejudice and suggested that "district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint at which time an order to dismiss the action would be appropriate." Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir. 1976).

interference.  Id. at 213 (citing Glenn v. Point Park College, 272 A.2d 895, 898–99 (Pa. 1971)). Certainty of the prospective contract is not required, but there must be a showing of something greater that a "mere hope."  Glenn, 272 A.2d at 898–99; see also Phillips v. Selig, 959 A.2d 420, 428 (3d Cir. 2008) (holding that a "reasonable likelihood" of occurrence is something less than a contractual right, but more than a mere hope that there will be a future contract).  An objective standard must be applied when determining whether a "reasonable likelihood or probability" existed.  See Phillips, 959 A.2d at 428.  "Furthermore, a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship."  Acumed, 561 F.3d at 213 (citing Phillips, 959 A.2d. at 429).

We agree with Uber that Plaintiff's claim for tortious interference fails because it has failed to plead and establish the third element, i.e., the absence of privilege or justification on the part of Uber.  Id. at 214 ("[P]ennsylvania courts require the plaintiff, as part of his prima facie case, to show that the defendant's conduct was not justified.") (citing Triffin v. Janssen, 626 A.2d 571, 574 n.3 (Pa. Super. Ct. 1993)); see also Bahleda v. Hankison Corp., 323 A.2d 121, 122–123 (Pa. Super. Ct. 1974) ("[T]he presence of a privilege is not an affirmative defense, rather, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff.").  "Pennsylvania has adopted section 768 of the Restatement (Second) of Torts, which recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with others' prospective contractual relationships."  Id. at 215 (citing Gilbert v. Otterson, 550 A.2d 550, 554 (Pa. Super. Ct. 1988)).  Thus, under section 768:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor . . . does not interfere improperly with the other's relation if: (a) the relation concerns a matter involved in the competition between the

>actor and the other; (b) the actor does not employ wrongful means;
>(c) his action does not create or continue an unlawful restraint of
>trade; and (d) his purpose is at least in part to advance his interest
>in competing with the other.

Restatement (Second) of Torts § 768; see also Acumed, 561 F.3d at 215.

Here, Plaintiff has established that Uber is its competitor.[7]  Thus, Plaintiff must sufficiently allege that one of the above four mentioned elements are lacking in order to survive a motion to dismiss.  We will limit our analysis to the second element (i.e., whether Uber's conduct was wrongful) since Plaintiff makes no allegations regarding the other elements.  Comment e to section 768 elaborates on the issue, and states that "physical violence, fraud, civil suits and criminal prosecutions, are all wrongful" under section 768.  See Acumed, 561 F.3d at 215-16.

In order to be successful in a tortious interference claim under the theory the defendant's conduct was wrongful, a plaintiff must "demonstrate that a defendant engaged in conduct that was actionable on a basis independent of the interference claim."  Id. at 215; see also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 531 (3d Cir. 1998).  The Third Circuit has also recognized that Pennsylvania courts have not interpreted this "wrongful means" element, but held that it was likely that the Pennsylvania Supreme Court would adopt this meaning, that is, for conduct to be wrongful it must be actionable for a reason independent from the claim of tortious interference itself.  See id. at 215-16 (citing Nat'l Data Payment Sys., Inc. v. Meridian Bank, 212 F.3d 849, 858 (3d Cir. 2000)).

Plaintiff's tortious interference claim must be dismissed because it does not sufficiently allege that Uber's conduct is actionable for a reason independent from the claim of tortious

---

[7] See Compl. ¶ 57 (alleging that Uber operates with the "specific aim of steering riders away from Plaintiff and other traditional taxicab companies"); id. ¶ 60 ("[M]any of Plaintiff's regular customers have ceased using Plaintiff's business and instead have opted to use Uber."); id. ¶ 82 (alleging that Uber engaged in conduct specifically designed to "convinc[e] Plaintiff's prospective customers to defect").

13

interference itself.  See Acumed, 561 F.3d at 215–16.  We have already dismissed the claims against Uber for prima facie tort and false advertising under the Lanham Act for the reasons set forth above.  See supra pp. 4-11.  Thus, Uber's conduct is not actionable for a reason independent from the tortious interference claim and must be dismissed.  See Acumed, 561 F.3d at 216 (reversing jury verdict in favor of the plaintiff for tortious interference claim, as a matter of law, where the jury had determined that the defendant's conduct was not independently actionable since they returned a defense verdict on the underlying fraud claim); Synthes, Inc. v. Emerge Med., Inc., No. 11-1566, 2014 WL 2616824, at *18-24 (E.D. Pa. June 11, 2014) (dismissing a tortious interference claim where underlying claims for unfair competition and trade libel had already been dismissed).

    Plaintiff attempts to save his tortious interference claim on the allegations that Uber has engaged in conduct that qualifies as a "nontraffic summary offense in the first instance and a misdemeanor of the third degree" for each additional offense under Pennsylvania taxi regulations.  (Pl.'s Opp. to Mot. to Dismiss Compl. at 15) (citing 53 Pa. C.S. § 5714(f)).  Plaintiff's attempt to base its tortious interference claim on these actions fails for two main reasons.  First, a summary offense is not a tort.  See Alpha Pro Tech., Inc. v. VWR Int'l LLC, 984 F. Supp. 2d 425, 450 (E.D. Pa. 2013) (citing Acumed, 561 F.3d at 219 & n. 15) ("[T]he gravamen of the 'independently actionable' requirement is that the conduct complained of, upon which the plaintiff seeks to base its tortious interference claim, is independently actionable in tort.").

    Second, the summary offenses do not require any wrongful intent on the part of the alleged violator.  See 53 Pa. C.S. § 5714(f).  "A doctrine not focused on the defendant's intent can hardly be the predicate for the 'wrongful means' claim of a tortious interference of contract

claim, which requires the plaintiff to prove '(2) *purposeful action* by the defendant, *specifically intended* to harm an existing relationship . . .; [and] (3) the absence of privilege or justification on the part of the defendant.'" Alpha Pro, 984 F. Supp. 2d at 450 (emphasis added) (citing Acumed, 561 F.3d at 212). Thus, even assuming arguendo that the independently actionable conduct need not be tortious, summary offenses for taxi violations still fail as a basis for a tortious interference claim "because its concern is not the wrongful nature of the defendant's mental state, which is clearly the focus of the wrongful means/independently actionable inquiry."[8] Id.

Therefore, we find that Plaintiff has failed to adequately allege a claim for tortious interference with prospective business relations. We will allow Plaintiff fourteen days to file an Amended Complaint if it so chooses to cure its deficiencies. However, we, again, counsel Plaintiff that if it fails to file an Amended Complaint within the fourteen days, we will dismiss the claim with prejudice for failing to state a claim from which relief can be granted.

## IV.    CONCLUSION

Based upon the reasons set forth above, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted. Count II of Plaintiff's Complaint alleging a prima facie tort is dismissed with prejudice. Counts I and III alleging false advertising under the Lanham Act and tortious interference with prospective business relations are dismissed without prejudice, and we will allow Plaintiff fourteen (14) days to properly amend its Complaint. We

---

[8] Plaintiff's false advertising claim under the Lanham Act, even if not dismissed, also does not require intent, and, consequently, cannot be a basis for Plaintiff's tortious interference claim. See Island Insteel Sys. v. Waters, 296 F.3d 200, 206 (3d Cir. 2002) (recognizing that Section 43(a) of the Lanham Act does not require an intent to deceive); see also Serbin v. Ziebart Int'l. Corp., Inc., 11 F.3d 1163, 1166-67 (3d Cir. 1993) (discussing how the 1946 revisions to Section 43(a) of the Lanham Act "discarded the willfulness/intent-to-deceive ingredients").

caution Plaintiff to carefully follow the guidelines set forth in this Opinion or its claim may be dismissed without leave to amend.

      An appropriate Order follows.